IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-70-D

| | | |
|---|---|---|
| BRIAN WALKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

In this action, plaintiff Brian Walker ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 19, 22. Both filed memoranda in support of their respective motions. D.E. 20, 23. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 8 Mar. 2017 Text Ord.

By his motion, plaintiff seeks remand of this case for a new hearing on the ground that the decision denying his claims errs in the evaluation of the opinions of his primary care physician, Linda Greenspan, D.O. The court agrees. Therefore, for the reasons set forth below,

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The versions of the regulations cited herein are those in effect at the time of issuance of the ALJ's decision.

it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I.   BACKGROUND

A.   Case History

Plaintiff filed an application for DIB and an application for SSI on 8 October 2012, both alleging a disability onset date of 1 September 2010, subsequently amended to 29 August 2012. Transcript of Proceedings ("Tr.") 37 (recitation by the administrative law judge ("ALJ") in his decision of the amended alleged disability onset date), 68-69 (ALJ's allowance of amendment of alleged disability onset date at hearing), 199 (original alleged disability onset date in SSI application), 206 (same for DIB application). The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 37. On 25 September 2014, a video hearing was held before the ALJ, at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 52-71. The ALJ issued a decision denying plaintiff's claims on 30 October 2014. Tr. 37-46. Plaintiff timely requested review by the Appeals Council (Tr. 28-29), but on 22 February 2016, it denied the request (Tr. 1), finding that additional medical evidence submitted by plaintiff (Tr. 6-7, 15-27) was not relevant on the grounds that it related to a period postdating the ALJ's decision (Tr. 2). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 14 April 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See* Mot. for Leave to Proceed *In Forma Pauperis* ("*IFP*") (D.E. 1); Ord. Granting *IFP* Mot. (D.E. 4); Compl. (D.E. 5).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see id.* § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see id.* § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 32 years old on the alleged onset date of disability and 34 years old on the date of the hearing. *See, e.g.*, Tr. 44 ¶ 7; 55. The ALJ found that plaintiff has a limited education[5] (Tr. 44 ¶ 8) and past relevant work as a forklift operator (Tr. 44 ¶ 6).

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[5] Under the Regulations, "limited education" means

> [A]bility in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. [The Social Security Administration] generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

The ALJ found that plaintiff met the insured requirements under the Act through 30 September 2014. Tr. 39 ¶ 1. Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ then found at step one that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, 29 August 2012. Tr. 39 ¶ 2. At step two, the ALJ found that plaintiff has the following severe impairments that are severe within the meaning of the Regulations: diabetes mellitus, hypertension, obesity, and osteoarthritis of the knee. Tr. 39 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 40 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[6] except he can never climb ladders/ropes/scaffolds and only occasionally climb ramps/stairs. He can occasionally balance, crouch, kneel, and crawl. Furthermore, he can frequently stoop and must avoid concentrated exposure to unprotected heights. He is limited to simple, routine, repetitive tasks. Lastly, the claimant is limited to jobs that do not require any complex written communication.

Tr. 41 ¶ 5. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (1983). By not limiting plaintiff's standing or walking time, the ALJ thus found him able to stand or walk for about six hours each eight-hour workday.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 44 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

existing in significant numbers that plaintiff could perform, including jobs in the occupations of cashier II, inspector/hand packager, and parking lot attendant. Tr. 45 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the alleged disability onset date, 29 August 2012, through the date of the decision, 30 October 2014. Tr. 45 ¶ 11.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. APPLICABLE LEGAL PRINCIPLES

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations

7

prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources," including nurse practitioners and therapists. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (listing nurse practitioners and therapists among "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an

acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin*, No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See*

Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

IV. ANALYSIS

Dr. Greenspan treated plaintiff from 3 September 2009 through the date of issuance of the ALJ's decision on 30 October 2014.[7] See Tr. 410-29, 465-68, 558-82. During this period, Dr. Greenspan saw plaintiff 17 times, 6 before the alleged disability onset date and 11 times after it.

Dr. Greenspan completed five RFC questionnaires on plaintiff during this period. Tr. 431-32 (Ex. 5F), 516-17 (Ex. 11F), 563-64 (Ex. 14F), 566-67 (Ex. 15F), 600-01 (Tr. 18F). The ALJ summarized the opinions set forth in the questionnaires as follows:

> I have carefully considered the opinion evidence of record, including the various opinions provided by Dr. Linda Greenspan at Black River Health Services. Opinions from Dr. Greenspan are contained at Exhibits 5F, 11F, 14F, 15F, and 18F. These opinions, although authored at different points in time, arrive at generally the same conclusion. At Exhibit 5F, Dr. Greenspan concluded that the claimant could not perform even sedentary work and needed to take unscheduled breaks more than generally reasonable. In January 2013, she made largely the same conclusion, stating that the claimant could only stand, walk and sit for 1 hour each in an 8-hour day. (Exhibit 11F) In April and May 2013, she stated generally the same thing. (Exhibits 14F and 15F) Most recently, in 2014 Dr. Greenspan concluded the same. (Exhibit 18F)

Tr. 44 ¶ 5.

Dr. Greenspan's limitation of plaintiff to walking or standing one hour each workday contrasts with the ALJ's determination that he can walk or stand for a total of about six hours

---
[7] The medical evidence from plaintiff that the Appeals Council did not admit included records of visits by plaintiff with Dr. Greenspan postdating issuance of the ALJ's decision. See, e.g., Tr. 20-21, 23-24, 26-27.

10

each workday. In addition, the ALJ made no accommodation in his RFC determination for frequent breaks by plaintiff, as Dr. Greenspan does.

The ALJ then stated "[o]verall, all of the opinions authored by Dr. Greenspan are accorded little weight." Tr. 44 ¶ 5. He gave five reasons:

> [1] The evidence of record since the amended alleged onset date documents only conservative treatment. [2] The claimant is capable of cooking and cleaning some and [3] also endorsed enjoying fishing and grilling out with friends. [4] In December 2013, he stated that he was feeling well. [5] Also, in March 2014 he was advised to walk 3-4 times per week. (Exhibit 16F) As such, Dr. Greenspan's opinions are not consistent with the substantial medical evidence of record.

Tr. 44 ¶ 5.

As plaintiff contends, the court finds that the reasons given by the ALJ do not adequately justify the ALJ's discounting Dr. Greenspan's opinions. With respect to the first reason, the purported fact that the treatment plaintiff received has been conservative does not directly address plaintiff's ability to work without frequent breaks, or to stand or walk for extended periods during the workday.

The same is true of the ALJ's next reason, the finding that plaintiff is capable of cooking and cleaning. There is no specification of the length of time plaintiff is able to cook or clean, or his need for breaks while cooking or cleaning, only that he can do "some" cooking and cleaning. Tr. 44 ¶ 5. The finding clearly appears to be based on plaintiff's testimony. *See* Tr. 40 ¶ 3; 41 ¶ 4; 42 ¶ 5. He testified that he did "a little cooking" and "a little cleaning." Tr. 66; *see also* Tr. 68 ("[I] do what I help with the house chores . . . .").

As to the third reason, the ability to fish and grill also does not necessarily entail the ability to work without frequent breaks, or stand or walk for extended periods. Indeed, both are leisure activities that are sedentary in nature and may well entail almost continuous sitting (or even lying down on, say, a lawn chair) with only brief interludes of activity. Particularly with

respect to grilling, it is questionable whether the activity would approach the length of a workday. The ALJ bases this finding as well on plaintiff's testimony. *See* Tr. 44 ¶ 5 ("The claimant . . . also *endorsed* enjoying fishing and grilling out with friends." (emphasis added)); *see also* Tr. 41 ¶ 4; 42 ¶ 5; 67-68. In his testimony, plaintiff did not provide details regarding the length of his sessions grilling and fishing, any practice he may have with respect to breaks, or his standing and walking habits when grilling and fishing.

Turning to the ALJ's fourth reason, the determination that in December 2013 plaintiff stated that he was feeling well appears to be based on the finding in Dr. Greenspan's note on her 18 December 2013 visit with plaintiff that "pt feeling well." Tr. 572. The fact that on one office visit plaintiff reported he was feeling "well" sheds little light on his condition regarding the other portions of the alleged period of disability spanning over two years.

Moreover, "feeling well" does not necessarily encompass plaintiff's ability to work without frequent breaks, or to stand or walk for extended periods. The section of the note in which this finding appears reads:

**History of Present Illness**
FASTING FOLLOW UP DM HTN LIPID: pt feeling well.

Tr. 572 (formatting original). Thus, this finding by Dr. Greenspan appears to relate to plaintiff's diabetes mellitus ("DM"), hypertension ("HTN"), and hyperlipidemia ("LIPID"). Dr. Greenspan diagnosed plaintiff with all these conditions. *See* Tr. 573.

As to the fifth reason, the ALJ's finding that plaintiff was advised to walk appears to be based on Dr. Greenspan's note on her 18 March 2014 visit with plaintiff. *See* Tr. 570. Again, this advice says little, if anything, about plaintiff's ability to work without frequent breaks, or to stand or walk for extended periods. Walking three to four times over the seven days in a full week equates to walking once about every other day. Dr. Greenspan's opinion, of course, relates

to walking (or standing) every day of a five-day workweek. Furthermore, there is no specification by the ALJ—or Dr. Greenspan—of the length of the walks or the taking of breaks, if any, during the walks. The finding therefore does not preclude the length of the walks from being consistent with the one-hour per workday limit Dr. Greenspan found applicable to plaintiff.

In conclusion, the ALJ states, "*As such*, Dr. Greenspan's opinions are not consistent with the substantial medical evidence of record." Tr. 44 ¶ 5 (emphasis added). The court deems this statement to be a summary of his prior, more specific findings, rather than a new finding that Dr. Greenspan's opinions are inconsistent with substantial medical evidence of record. But even if this finding were deemed to be an additional reason for discounting Dr. Greenspan's opinions, it is too broad and vague to be proper. *See, e.g., Monore v. Colvin*, 826 F.3d 176, 190-91 (4th Cir. 2016) ("The ALJ stated that he gave that opinion only 'limited weight' based on a determination that 'the objective evidence or the claimant's treatment history did not support the consultative examiner's findings.' However, the ALJ did not specify what 'objective evidence' or what aspects of Monroe's 'treatment history' he was referring to. As such, the analysis is incomplete and precludes meaningful review." (record citation omitted)); *Stewart v. Colvin*, Civ. Act. No. 7:15-CV-6152017 WL 944041, at \*6 (W.D. Va. 30 Jan. 2017), *rep. & recomm. adopted*, 2017 WL 943965 (9 Mar. 2017).

The failure by the ALJ to adequately explain his assessment of Dr. Greenspan's opinions itself constitutes legal error, and the error is not harmless. *See, e.g., Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.\* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at \*4 & n. 7, 7 (M.D.N.C. 14 Aug. 2013). A proper assessment of the opinions could have led to a different outcome in various

aspects of the ALJ's analysis, including his assessment of plaintiff's credibility, his determination of plaintiff's RFC, and, conceivably, his ultimate decision on disability. A central reason, of course, is the potentially substantial weight properly due the opinions of Dr. Greenspan given, among other circumstances, her long-term treatment relationship with plaintiff and her opinions as apparently the only medical opinions from a treating physician of plaintiff's. *See, e.g., Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (DE–31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818 (20 Aug. 2014). Further, the vocational expert testified that if a person were to be off task for more than an hour each day, as the need for frequent breaks would seemingly entail, all work would be precluded. Tr. 70. Remand of this case is therefore required.

The deficiencies by the ALJ in his assessment of Dr. Greenspan's opinions are also properly seen as frustrating meaningful substantial-evidence review of the ALJ's decision by the court. Specifically, by virtue of these deficiencies, the ALJ failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding Dr. Greenspan's opinions, as required. *Monroe* 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This failing provides an independent basis for remand.

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 19) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 22) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 16 June 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure**

to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

This 2nd day of June 2017.

James E. Gates
United States Magistrate Judge